## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SISTEMA UNIVERSITARIO ANA G. MÉNDEZ, INCORPORADO,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>Defendant. | Civil No.<br><br><br>Re:<br><br>RESTITUTION OF MONIES IMPROPERLY PAID PURSUANT TO ARTICLE 1795 OF PUERTO RICO CIVIL CODE; BREACH OF CONTRACT; DECLARATORY JUDGMENT |

## COMPLAINT

COMES NOW Sistema Universitario Ana G. Méndez, Incorporado ("SUAGM"), through the undersigned attorneys, and very respectfully states and alleges as follows:

### I.    JURISDICTION AND VENUE

1.    28 U.S.C. §§ 1332(a) and 1348 vests this Court with jurisdiction over this action, as the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and it arises between citizens of different states and/or between citizens or subjects of a foreign state or nation.

2.    Venue in this Court is proper under 28 U.S.C. §1391(b)(2) because the events and omissions giving rise to this Complaint occurred within the District of Puerto Rico.

### II.    THE PARTIES

3.    SUAGM is non-profit corporation, organized, incorporated, and existing pursuant to the laws of the Commonwealth of Puerto Rico. SUAGM's offices are registered in 1399 Ave. Ana G. Méndez, San Juan, Puerto Rico 00926-2602. Its postal address is P.O. Box 21345, San Juan, Puerto Rico 00928-1345.

4.    U.S. Bank National Association ("US Bank") is a national banking association formed under the laws of the United States and is authorized thereunder to transact the business of banking. US Bank's offices are registered in 425 Walnut Street, Cincinnati, Ohio 45202. <u>See</u>, 28 U.S.C § 1348 ("All national banking associations shall . . . be deemed citizens of the States in which they are respectively located."). <u>See also</u>, <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303, 307 (2006) ("[A]a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located."). <u>See also</u>, <u>McKenna v. Wells Fargo Bank, N.A.</u>, 693 F.3d 207, 212 (1st Cir. 2012).

## II. <u>FACTS</u>

### *AFICA*

5.    The Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA") is a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, created under Act No. 121 of the Legislature of the Commonwealth, approved on June 27, 1977 (the "Act").

6.    AFICA was created in order to facilitate the financing of facilities, including educational facilities such as those owned by SUAGM, that promote the economic development of Puerto Rico.

7.    AFICA seeks to achieve its goal by issuing non-recourse tax-exempt bonds and lending the proceeds of such bonds to a "debtor" (almost always a private entity), such as SUAGM, pursuant to a "financing agreement" (almost always a loan agreement).

8.    The bonds issued by AFICA to finance a particular project are payable solely out of the revenues "derived by [AFICA] under the clauses of one or more financing agreements, all

as provided in the trust agreement under which the bond issue is authorized." Sec. 1262 of the Act.

9.      The Act provides that "the bonds issued by [AFICA] shall not constitute an indebtedness of the Commonwealth of Puerto Rico nor of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable therefor, and such bonds shall be payable solely out of those funds pledged for the payment thereof." Sec. 1261 of the Act (emphasis added). The Act makes clear that AFICA bonds are not payable from Puerto Rico Government revenues, but solely from revenues generated by the relevant debtor.

10.     Since its creation, AFICA has issued dozens of individual series of bonds in order to finance the acquisition, construction and equipping by various "debtors" of educational and industrial facilities, hospitals and other medical facilities, and hotels and other tourism-related facilities in Puerto Rico.

11.     Each series of AFICA bonds is independent of each other series of bonds and is payable solely from the revenues of the particular debtor for which the bonds were issued.

### *SUAGM*

12.     SUAGM is a private non-profit corporation that owns and operates three universities and other educational institutions in the Commonwealth of Puerto Rico and in several states of the United States.

13.     SUAGM is not an instrumentality of the Government of Puerto Rico.

14.     SUAGM is an organization described in Section 501(c)(3) of the United States Internal Revenue Code that is exempt from income tax under Section 501(a) of such Code.

15.    As an organization described in Section 501(c)(3) of the U.S. Internal Revenue Code, SUAGM may borrow in the U.S. tax-exempt municipal market by obtaining the proceeds of the sale of tax-exempt bonds issued through conduit government entities such as AFICA.

16.    AFICA acts as a conduit that, by issuing bonds and lending the proceeds to certain private entities, allows debtors such as SUAGM to access the U.S. tax-exempt municipal market. Neither AFICA nor any other Puerto Rico Government instrumentality is liable for SUAGM's obligations.

### *SUAGM Bonds*

17.    In 2002, 2006 and 2012, AFICA issued three series of tax-exempt non-recourse bonds (the "Series 2002 Bonds," "Series 2006 Bonds" and "Series 2012 Bonds," and collectively the "SUAGM Bonds") and lent the proceeds thereof to SUAGM pursuant to three separate loan agreements (the "Series 2002 Loan Agreement," the "Series 2006 Loan Agreement," and the "2012 Loan Agreement," and collectively the "Loan Agreements").

18.    Pursuant to Section 5.1(a)(i) of the Series 2012 Loan Agreement, SUAGM agreed to pay "amounts which shall correspond to the payments in respect of the principal of and premium, if any, and interest on the Series 2012 Bonds whenever and in whatever manner the same shall become due…" The other Loan Agreements contain similar language.

19.    The SUAGM Bonds were issued by AFICA pursuant to an Indenture of Trust dated as of July 1, 1999 (the "Indenture") between AFICA and State Street Bank and Trust Company, N.A., as the original trustee. US Bank later became successor trustee.

20.    A Supplement to the Indenture was executed in connection with each series of SUAGM Bonds.

21.     The disclosure documents used to market the SUAGM Bonds (referred to as an "Official Statement") make clear that the Government of Puerto Rico is not responsible for the payment of the SUAGM Bonds. The Official Statement for the Series 2012 Bonds, for example, states on its cover page, in bold type, that "The Series 2012 Bonds shall not constitute an indebtedness of the Commonwealth of Puerto Rico or any of its political subdivisions and neither the Commonwealth of Puerto Rico nor any of such political subdivision shall be liable thereon. Neither the Commonwealth of Puerto Rico nor any of its political subdivisions is liable for payment of the Series 2012 Bonds. The Authority [AFICA] has no taxing power." The Official Statements for the Series 2002 Bonds and the Series 2006 Bonds have similar language.

22.     The cover page of the Official Statement for the Series 2012 Bonds also states that the Series 2012 bonds "are limited obligations of [AFICA] and, except to the extent payable from bond proceeds and certain other moneys pledged therefor, will be payable solely from and secured by an assignment of revenues to be derived by [AFICA] under a loan agreement with [SUAGM]."  The Official Statements for the Series 2002 Bonds and the Series 2006 Bonds have similar language.

23.     The Official Statements for the SUAGM Bonds leave no doubt that purchasers of the SUAGM Bonds are lending money to SUAGM, not to the Government of Puerto Rico. The Official Statements contain extensive disclosure about SUAGM, including its audited financial statements. On the other hand, no financial information relating to AFICA or to the Commonwealth's financial condition is included in the Official Statements because such information is not relevant to a buyer of the SUAGM Bonds.

24.     The Indenture states that: "The Bonds shall not constitute an indebtedness of the Commonwealth of Puerto Rico nor any of its political subdivisions, and neither the

Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable therefor, and such Bonds shall be payable solely out of the Pledged Funds.1 Neither the credit nor the taxing power of the Issuer [AFICA] or the Commonwealth of Puerto Rico, is pledged to the payment thereto." (Section 2.2; emphasis added.)

25.     Pursuant to the Indenture, AFICA assigned to US Bank "(1) All right, title and interest of [AFICA] in, to and under the Loan Agreement … all Loan Payments … and other moneys payable by [SUAGM] …; (2) All of [AFICA's] rights to receive and enforce repayment of its loan to [SUAGM] under the Loan Agreement;2 (3)  All proceeds of such rights and such loan and any rights to the Pledged Funds …; (4) The proceeds of the Bonds and all other funds, moneys and securities from time to time deposited with or required to be deposited with or on behalf of the Trustee under any of the provisions of this Indenture …; and (5) All other rights, titles and interest which are subject to the lien of this Indenture…"

26.     SUAGM pays the principal of and interest on the SUAGM Bonds directly to US Bank, in its role as trustee. SUAGM does not pay such principal and interest to AFICA or any other Puerto Rico Government instrumentality.

27.     Pursuant to the provisions of the Indenture and Loan Agreements, SUAGM's obligation to repay the SUAGM Bonds is not affected by actions affecting AFICA or any Puerto Rico Government instrumentality.

---

1 "Pledged Funds" are defined in the Indenture as amounts paid by SUAGM under its Loan Agreements with AFICA, the proceeds of the bonds, and investment earnings on funds held by the trustee under the Indenture.

2 The Indenture defines "Loan Agreement" as including "with respect to a series of Additional Bonds, the loan agreement between [AFICA] and [SUAGM] relating to such series of Additional Bonds…" "Additional Bonds" include any series of SUAGM bonds issued pursuant to the Indenture.

### *The Fiscal Crisis of the Puerto Rico Government*

28.    In 2014, the major credit rating agencies downgraded the bonds of the Puerto Rico Government and of certain of its instrumentalities to non-investment grade ratings.

29.    As the fiscal crisis worsened, on April 6, 2016, Puerto Rico enacted the Emergency Moratorium and Financial Rehabilitation Act (the "Moratorium Act"), which recognized that "the Government of Puerto Rico does not have sufficient resources to comply with debt service obligations as originally scheduled and, additionally, to continue providing essential services to the people…" (Preamble to Moratorium Act.)

30.    The Moratorium Act authorized the Governor of Puerto Rico to declare (by executive order) a moratorium on debt service payments for a limited period of time for the Commonwealth and other governmental instrumentalities of Puerto Rico.

31.    The Governor also issued several executive orders in 2016 that declared payment moratoriums on various debt obligations of the Government.

32.    Pursuant to the Moratorium Act and such executive orders, the Government of Puerto Rico and certain of its instrumentalities failed to pay debt service under their bond debt as it became due.

33.    In addition to failing to pay debt service on their bonds, several Puerto Rico Government instrumentalities failed to comply with their financial reporting ("continuing disclosure") obligations under their bond documents.

34.    As a result of the Government of Puerto Rico's financial situation, on June 30, 2016, the U.S. Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), pursuant to which, among other things, Congress established a

financial oversight board and provided a mechanism, similar to bankruptcy, for the restructuring of the debt of the Government of Puerto Rico, its instrumentalities, and its public corporations.

35.     The SUAGM Bonds were not affected by the Puerto Rico Government defaults or by the enactment of PROMESA, because SUAGM is not an instrumentality of the Government of Puerto Rico and the SUAGM Bonds are not a debt of the Government of Puerto Rico, its instrumentalities, or its public corporations.

36.     SUAGM has never defaulted in the payment of the SUAGM Bonds.

37.     SUAGM has always complied with its disclosure obligations relating to the reporting of its financial statements and its other obligations under the Loan Agreements.

38.     SUAGM has never been a party to any PROMESA bankruptcy or other PROMESA-related proceedings.

### *US Bank's Role as Trustee of the SUAGM Bonds and Other Bonds Issued by the Government of Puerto Rico*

39.     US Bank acts as trustee, registrar and paying agent of the SUAGM Bonds. In this role, as described above, SUAGM collects payments made by SUAGM with respect to the SUAGM Bonds and transfers such payments to the registered holders of the SUAGM Bonds. In addition, upon the occurrence of an "Event of Default" under the Indenture, US Bank may take certain actions to protect the interests of the holders of the SUAGM Bonds.

40.     There is currently no Event of Default under the Indenture.

41.     According to US Bank, US Bank serves as bond trustee for bonds issued by nine separate government issuers: the Puerto Rico Electric Power Authority, the Puerto Rico Public Buildings Authority, the University of Puerto Rico, the Puerto Rico Infrastructure Financing Authority, the Puerto Rico Industrial Development Company, the Municipal Finance Agency,

the Puerto Rico Children's Trust, the Puerto Rico Public Finance Company, and the Puerto Rico Housing Finance Authority.

42.    According to US Bank, in addition to the SUAGM Bonds, US Bank also serves as bond trustee for bonds issued by AFICA that are payable from lease payments by the University of Puerto Rico (the "Desarrollos Universitarios Bonds").

43.    Except for the SUAGM Bonds, all the bonds for which US Bank acts as bond trustee (including the Desarrollos Universitarios Bonds) are payable by Puerto Rico Government instrumentalities.

### *US Bank Improperly Allocated Extraordinary Expenses Relating to the Puerto Rico Fiscal Crisis to SUAGM*

44.    Section 9.5 of the Indenture provides that AFICA "shall cause [SUAGM] to (i) pay to the Trustee [US Bank] and the Registrar [US Bank as well] reasonable fees and charges (including reasonable counsel fees) and for all services performed under this Indenture, which fees and charges shall not be limited by any provision of law applicable to a trustee of an express trust and (ii) indemnify the Trustee pursuant to the Loan Agreement."

45.    Pursuant to § 5.1(a)(ii) of the Loan Agreements, SUAGM agreed to pay to the Trustee "the fees and charges of the Trustee for all services of the Trustee (including reasonable counsel fees) and all reasonable expenses incurred under the Indenture . . ."

46.    In accordance with the Indenture and the Loan Agreements, US Bank sent SUAGM monthly invoices related to services rendered by it as trustee, including legal fees and costs. SUAGM has always paid the ordinary fees and expenses billed by US Bank.

47.    Starting in October of 2014, US Bank began billing SUAGM extraordinary charges not previously billed, including extraordinary administrative charges and legal fees and expenses, arising from extensive monitoring of and participation in bankruptcy proceedings and

other meetings and events related to PROMESA and the financial crisis of the Government of Puerto Rico. These extraordinary expenses included invoices from three law firms: (i) Hogan Lovells, (ii) Rivera, Tulla & Ferrer, and (iii) Shipman & Goodwin.

48.     US Bank has been improperly billing SUAGM for such services notwithstanding the fact that the SUAGM Bonds are not affected by the Puerto Rico Government's fiscal situation or PROMESA, given that SUAGM is a private entity.

49.     US Bank has apportioned the legal fees and costs incurred by it in connection with the monitoring of the Puerto Rico Government's fiscal situation and PROMESA-related legal proceedings among the various issuers for which US Bank serves as trustee, including the nine entities that are Puerto Rico Government instrumentalities, the Desarrollos Universitarios AFICA Bonds (which as described above are payable by the University of Puerto Rico), and SUAGM.

50.     The invoices for legal fees made available by US Bank to SUAGM makes clear that the work performed by these law firms related exclusively to the Puerto Rico Government, and not to SUAGM.  Among the legal tasks improperly billed to SUAGM by US Bank are (i) monitoring and participation in the PROMESA bankruptcy proceedings relating to the Puerto Rico Government and certain of its public corporations; (ii) monitoring and reporting on meetings of the PROMESA financial oversight board; (iii) analyzing potential claims to be filed in the PROMESA bankruptcy proceedings; (iv) attending mediation proceedings relating to the debt of the Puerto Rico Government; (v) analyzing the Puerto Rico Government budget; and (vi) researching the Puerto Rico Government's liquidity situation.  Clearly, those matters relate to the Puerto Rico Government's financial situation and PROMESA, not to the SUAGM Bonds.

51.     By mistake, SUAGM paid all invoices sent by US Bank between October of 2014 and August of 2018 (a total of 39 invoices) for extraordinary services as trustee for the SUAGM bonds, including the legal expenses referred to above.

52.     However, in August of 2018, after an internal audit of invoices related to US Bank's services, SUAGM became aware that it had been paying for extraordinary administrative and legal expenses incurred by US Bank as a result of its monitoring of and participation in PROMESA judicial and bankruptcy proceedings related to the financial crisis of the Government of Puerto Rico.

53.     The total amount of extraordinary administrative charges and legal fees improperly billed and paid by SUAGM during this period is $578,938.44.

54.     Since August of 2018, SUAGM has repeatedly objected to the payment of these extraordinary administrative charges and legal expenses and it has requested the reimbursement of all amounts improperly billed by US Bank since 2014.

55.     In response to SUAGM's requests, US Bank initially agreed to discontinue billing SUAGM for these extraordinary administrative charges and legal expenses.

56.     In addition, US Bank acknowledged that it had improperly allocated $194,858.00 to SUAGM in extraordinary administrative and legal expenses that, even under its own allocation methodology, should have been allocated to the Desarrollos Metropolitanos AFICA Bonds, and offered to return that money. However, to this day US Bank has not returned this (or any other) amount to SUAGM.

57.     During the communications with US Bank, SUAGM has at all time insisted that it was its intention to recover any and all monies improperly paid for services rendered by US Bank that were unrelated to the SUAGM Bonds. Also, SUAGM emphasized that it would not

pay in the future for any legal expense related to PROMESA proceedings or to the Puerto Rico Government's financial situation, given that these matters are unrelated to the SUAGM Bonds.

58.    Despite SUAGM's objections, US Bank has continued to allocate extraordinary administrative and legal expenses related to PROMESA proceedings and the Puerto Rico Government's financial situation in its invoices to SUAGM. The total amount of extraordinary expenses billed by US Bank since September of 2018 exceeds $78,000.00, in addition to the $578,938.44 mentioned above.  SUAGM has refused to pay these extraordinary expenses.

59.    The extraordinary administrative and legal expenses related to the monitoring of and participation in PROMESA proceedings and the Puerto Rico Government's financial situation which US Bank has been including in its monthly invoices are not necessary legal expenses as per the terms and conditions of the Loan Agreements and the Indenture. Even if some of these expenses were deemed to be necessary -- which is not the case --  the amounts allocated to SUAGM would nonetheless be utterly unreasonable.

60.    As recently as November 12, 2019, and contrary to its prior acknowledgement that these extraordinary administrative and legal expenses are not properly allocated to SUAGM, US Bank sent additional invoices for such matters, which SUAGM again rejected.

## V.    FIRST CAUSE OF ACTION: RESTITUTION OF MONIES IMPROPERLY PAID PURSUANT TO ARTICLE 1795 OF THE PUERTO RICO CIVIL CODE

61.    SUAGM incorporates by reference each and every allegation set forth in paragraphs 1 to 60.

62.    Article 1795 of the Puerto Rico Civil Code provides as follows: "If a thing is received when there was no right to claim it and which, through an error, has been unduly delivered, there arises an obligation to restores the same." LAWS OF P.R. ANN. Tit. 31, § 5121.

63. In Puerto Rico legal parlance, the cause of action recognized under Article 1795 is sometimes referred to as *undue collection*. See, *e.g.*, Dantzler, Inc. v. Puerto Rico Ports Authority, Civil No. No. 17-1447 (FAB), 2018 WL 4657185, at *16 (Sept. 26, 2018).

64. Furthermore, the cause of action for undue collection recognized under Article 1795 is subject to a fifteen (15) year statute of limitations. See, *e.g.*, Mun. de Cayey v. Soto Santiago, 131 D.P.R. 304, 322 (1992).

65. For a claim under Article 1795 to prosper, three (3) elements must be met, namely: (1) a payment was made with the intention of extinguishing an obligation; (2) the payment made does not have just consideration or cause, that is, there was no legal obligation between person that made the payment and the person who received it; and (3) the payment was made by error and not by mere liberality or any other concept. See, E.L.A. v. Crespo Torres, 180 D.P.R. 776, 793-794 (2011). See also, Dantzler, Inc., 2018 WL 4657185, at *16 n. 16.

66. For purposes of Article 1795, distinctions between an error of fact and an error of law are inapposite. See, Crespo Torres, 180 D.P.R. at 797.

67. The cause of action under Article 1795 is applicable not only when a person paid a sum which was not legally due, but also when that person paid in excess of what was actually due. See, 2-II M. ALBALADEJO, DERECHO CIVIL: DERECHO DE OBLIGACIONES 501 (8th ed. 1989) (quoted with approval in Sepúlveda v. Depto. de Salud, 145 D.P.R. 560, 570 (1998), *reversed on other grounds*, 180 D.P.R. at 797).

68. SUAGM paid monies to US Bank for services unrelated to the issuance of the SUAGM Bonds and, hence, in excess of its obligations under the Loan Agreements and the Indentures.

69.     These monies were paid by error and without consideration or cause, given that the same covered services rendered that were not related to US Bank's responsibilities as trustee of SUAGM Bonds.

70.     SUAGM Bonds are not covered by nor related to PROMESA and the judicial proceedings commenced thereunder.

71.     Furthermore, SUAGM Bonds do not represent an indebtedness of the Puerto Rico Government. Therefore, Puerto Rico's financial situation and inability to pay for its obligations are simply immaterial for purposes of the SUAGM Bonds.

72.     In light of the above, in accordance with Article 1795, US Bank is obliged to restitute all monies received for legal fees and costs improperly allocated to SUAGM, plus attorney's fees, costs, and pre- and post-judgment interest.

## VI. <u>SECOND CAUSE OF ACTION: BREACH OF CONTRACT</u>

73.     SUAGM incorporates by reference each and every allegation set forth in paragraphs 1 to 72.

74.     As per § 9.5 of the 1999 Indenture (and the supplemental indentures), US Bank was only entitled to the payment, by SUAGM, of "reasonable fees and charges (including reasonable counsel fees)."

75.     Furthermore, as per the Loan Agreements, SUAGM was only bound to pay for "reasonable fees", including "reasonable counsel fees."

76.     Article 1077 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3052, provides, in pertinent part, that when one of the parties to a contract fails to fulfill "what is incumbent upon him," the person prejudiced by such inaction may seek the fulfillment of the obligation, with the payment of damages and interest arising from such breach.

77.    In addition, Article 1054 of the Civil Code, 31 L.P.R.A. § 3018, provides that "[t]hose who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."

78.    US Bank was negligent in its undertaking of "what it was incumbent" upon it and passed on to SUAGM improper and unreasonable legal fees that were clearly unrelated to the SUAGM Bonds.

79.    Therefore, due to US Bank's negligence and acts in violation of Article 1054, SUAGM paid in excess of its contractual obligations as per the Loan Agreements.

80.    Accordingly, US Bank is responsible for all the losses and damages suffered by SUAGM as a result of its breach of contract, negligent conduct and acts in violation of Article 1054.

### VII.   THIRD CAUSE OF ACTION: DECLARATORY RELIEF

81.    SUAGM incorporates by reference each and every allegation set forth in paragraphs 1 to 80.

82.    The *Declaratory Judgment Act*, 28 U.S.C. § 2201, gives this Court jurisdiction to issue declaratory judgments. See also, Rishell v. Medical Card System, Inc., 925 F.Supp.2d 211, 221 (D.P.R. 2013).

83.    Moreover, "[t]he Declaratory Judgment Act serves a valuable purpose. It is designed to enable litigants to clarify legal rights and obligations before acting upon them." Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530, 534 (1st Cir. 1995).

84. The authority conferred by 28 U.S.C. § 2201 is further confirmed by Fed.R.Civ.P. 57, which expressly authorizes this Court to grant declaratory relief regardless of "[t]he existence of another adequate remedy…"

85. Notwithstanding SUAGM's objections, to this day, US Bank continues to bill SAUGM for expenses related to the monitoring and supervising of the Puerto Rico Government's financial situation and PROMESA, although such matters are unrelated to the SUAGM Bonds.

86. As per the terms of the Loan Agreements and the Indentures, these legal fees are neither necessary nor "reasonable" insofar as the Puerto Rico's financial situation and PROMESA do not affect SUAGM's ability to pay its bonds. Thus, US Bank may not legally allocate and invoice SUAGM for such legal fees and expenses, as it has continued to do notwithstanding SUAGM's objections.

87. Therefore, a dispute currently exists and SUAGM respectfully requests a declaration that US Bank is not entitled to payment related to legal fees and expenses for the monitoring and supervising of Puerto Rico's financial situation and/or judicial and bankruptcy proceedings commenced under PROMESA.

**WHEREFORE**, Sistema Universitario Ana G. Méndez, Incorporado, respectfully requests that this Court enter judgment granting the above-captioned *Complaint* and, after the corresponding proceedings: (1) order US Bank to pay SUAGM $578,893.44, plus attorney's fees, costs, and pre- and post-judgment interest, plus all additional amounts which US Bank has unlawfully retained or will retain from SUAGM for the payment of unnecessary and unreasonable legal fees and expenses ; (2) order US Bank to pay SUAGM for all other losses and damages suffered by it as a result of US Bank's breach of contract, including all the attorney's

fees it has been forced to incur as a result of US Bank's negligent conduct; and (3) declare that US Bank is not entitled to the payment of any legal fees and expenses related to the monitoring and supervising of the Puerto Rico Government's financial situation or judicial and bankruptcy proceedings commenced under the *Puerto Rico Oversight, Management, and Economic Stability Act*, including those that US Bank has invoiced since September of 2018.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 6th day of December 2019.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

**SEPULVADO MALDONADO & COURET**
**Attorneys & Counselors at Law**
**for Sistema Universitario Ana G. Méndez, Incorporado**
304 Ponce de León Ave
Suite 990
San Juan, P.R. 00918
Telephone: (787) 765-5656
Fax: (787) 294-0073

/s/ Lee R. Sepulvado-Ramos
LEE R. SEPULVADO RAMOS
USDC-PR No. 211912
lee_sepulvado@scmlawpr.com

/s/ Lady E. Cumpiano
LADY E. CUMPIANO
USDC-PR No. 211106
lcumpiano@scmlawpr.com